Filed 3/23/16  Route 66 CPAs v. Glendora Courtyard CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROUTE 66 CPAs, LLC,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GLENDORA COURTYARD, LLC et al.,<br><br>    Defendants and Appellants. | B264055<br><br>(Los Angeles County<br>Super. Ct. No. KC066584) |

        APPEAL from an order of the Superior Court of Los Angeles County, Dan T. Oki, Judge.  Affirmed.

        John W. Melvin; Law Offices of Ezekiel E. Cortez, Ezekiel E. Cortez and Joshi A. Valentine for Defendants and Appellants.

        Mahoney & Soll, Paul M. Mahoney and Richard A. Soll for Plaintiff and Respondent.

_____

Glendora Courtyard, LLC (Glendora) and Equity Ag Financial, Inc. (EAF) appeal from the trial court's denial of a motion to strike the second amended complaint of Route 66 CPAs, LLC (Route 66) under Code of Civil Procedure section 425.16.[1]  We affirm.

**BACKGROUND**

Route 66 owns one, and Glendora owns two, of the three office buildings in Glendora Courtyard, a commercial development which includes a surrounding parking lot, landscaping, driveways, sidewalks, and hardscape (the common area).  At the time this lawsuit was filed, a declaration of covenants, conditions, and restrictions (CC&Rs) governed the management of the common area.  Route 66 was responsible for 42.95 percent of the common area expenses, and Glendora was responsible for 57.05 percent, with payment due each month.  Glendora was the maintenance director for the development, and EAF was the property manager beginning in February 2012.

**The prior lawsuit**

In late 2011, a dispute arose between Glendora and Route 66.  Route 66 believed Glendora's planned improvements to the common area were unacceptable, too expensive, and not authorized by the CC&Rs.  In January 2012, Glendora demanded that Route 66 agree to the budgeted improvements, which would drastically increase Route 66's share of monthly expenses.  When discussions did not result in a resolution, on April 9, 2012, Route 66 filed a complaint against Glendora alleging breaches of the CC&Rs and seeking an injunction against the improvements and declaratory relief.  The trial court denied Route 66's requested preliminary injunction.  Glendora then filed a cross-complaint for equitable indemnity, interference with prospective economic advantage, and breaches of contract, alleging that under the CC&Rs it had the authority as maintenance director to make the proposed improvements.

Route 66 filed a special motion to strike under section 425.16, contending that Glendora's cross-complaint targeted a series of letters between the parties regarding the

_____

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

dispute over the common-area improvements, as well as allegations in Route 66's complaint. The trial court denied the motion. Route 66 appealed and we affirmed, concluding that the cross-complaint was directed at Route 66's underlying conduct in refusing to allow Glendora to make the improvements. (*Route 66 CPAs, LLC v. Glendora Courtyard, LLC* (May 13, 2014, B247318) [nonpub. opn.].)[2]

Meanwhile, Route 66's complaint in the prior lawsuit went to trial in October 2013. Route 66 announced it would not proceed on its claims for breach of contract and presented no evidence on those claims. On December 13, 2013, noting that the cross-complaint was not before it, the trial court found in favor of Route 66 on the declaratory relief claim, concluding that Glendora must obtain Route 66's consent before performing some of the alterations, Route 66 did not unreasonably withhold that consent, and Glendora could paint its own buildings but could not paint Route 66's building and charge Route 66 for the painting. The court denied injunctive relief. The trial court granted Glendora's motion for judgment under section 631.8 on Route 66's claims for breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty.

**The current lawsuit**

On December 23, 2013, Glendora sent a notice of default to Route 66, stating that Route 66 owed Glendora $171,330.27 for overdue common area maintenance obligations and for its share of the cost of resurfacing the parking lot. Glendora stated that it would file a lien as authorized by the CC&Rs if Route 66 did not cure the default in 10 days.

Route 66 filed a complaint for declaratory and injunctive relief against Glendora on December 27, 2013, alleging that Route 66 was not in default in any amount, Glendora's charges were improper, Glendora's notice of default was invalid under the terms of the CC&Rs and did not comply with applicable statutes, and the recordation of a lien would cause Route 66 irreparable injury. Route 66 sought a declaration of the

---

[2] We grant Glendora's request that we take judicial notice of our appellate opinion in the prior lawsuit. We deny Glendora's request that we take judicial notice of two isolated portions of the trial transcript from the prior lawsuit.

3

parties' rights under the CC&Rs and a preliminary and permanent injunction restraining Glendora from recording the notice of default. On December 31, 2013 Route 66 filed an ex parte application for a temporary restraining order to enjoin Glendora from recording an assessment lien, which the court denied. Glendora recorded a claim of lien on Route 66's building for $171,330.27 on January 15, 2014. On January 17, 2014, the trial court issued a preliminary injunction restraining Glendora from filing a lien in that amount. On January 22, Glendora issued a new notice of default in the amount of $57,360.67, stating that the prior lien was superseded. Route 66 paid the $57,360.67 under protest with a check dated January 27, 2014. Glendora nevertheless recorded a lien in that amount on February 19, 2014. On March 12, 2014, the court granted Route 66's motion to release the lien. After a court order dated May 1, 2014, Glendora filed a release of lien on May 5, 2014.

On March 2, 2015, Route 66 filed a second amended complaint (SAC). The SAC alleged that the first notice of default (for $171,330.27) was invalid and illegal, and requested declaratory relief stating the parties' rights, liabilities and obligations under the CC&Rs. The SAC also requested a preliminary and permanent injunction against Glendora's recording of a notice of default. Route 66 also requested an order removing Glendora as maintenance director, alleging that while Glendora claimed that EAF was the maintenance director, EAF was under the complete dominion and control of Glendora. Finally, Route 66 requested an accounting and restitution of the $57,360.67 it had paid to Glendora.

On March 18, 2015, Glendora filed a motion to strike the SAC under section 425.16 and for monetary sanctions against Route 66 and its counsel. Glendora asserted that the SAC arose out of its absolutely privileged activity in recording assessment liens (and incidental steps) and privileged litigation statements of defense counsel. Glendora pointed to three subparagraphs in the cause of action for removal of the maintenance director, which provided: "(*l*) Willful abuse of power by the Maintenance Director in falsely and fraudulently serving a notice of default in the amount of $171,330.27 for parking lot repairs that were never paid or incurred by the Maintenance Director";

4

"(q) Willful abuse of power by the Maintenance Director by recording an assessment lien for $57,360.67 after ROUTE 66 paid the money under protest, and then refusing to release the assessment lien"; and "(s) Willful abuse of power by the Maintenance Director in falsely and fraudulently notifying ROUTE 66 that City of Glendora directed the Maintenance Director's attorney to remove and replace most of the remaining turf and hedges with more white rock gravel and birds of paradise, and also to replace the sprinkler heads with a drip system, when no such direction was ever given by the City of Glendora." Glendora asserted that the three paragraphs were "necessary and material to each of the causes of action" and therefore the entire SAC should be stricken, because Route 66 had already lost all its claims based on the CC&Rs in the prior lawsuit and was now attempting to "bypass the controlling defense judgment under . . . [section] 631.8."

In opposition, Route 66 called the motion "patently frivolous." Route 66 agreed that the first two causes of action pertained to the first assessment lien. While the recording of an assessment lien was privileged activity, the trial court had already concluded in denying Glendora's earlier motion for summary judgment on the first amended complaint that the first two causes of action survived, because the litigation privilege under Civil Code section 47, subdivision (b) did not bar a property owner from challenging an invalid lien by way of a complaint for declaratory and injunctive relief. The trial court had also concluded in its order denying summary judgment that the issues in the first and second causes of action had not been previously adjudicated in the first lawsuit. As to the third and fourth causes of action, the trial court had previously ruled that they arose from Glendora's breach of the CC&Rs, the allegations regarding the liens were merely incidental, and the issues had not been previously adjudicated because they encompassed actions after the trial in the first lawsuit.

The trial court denied the motion to strike on April 23, 2015, adopting its tentative ruling. Glendora filed a timely notice of appeal.

## DISCUSSION

Section 425.16, known as the anti-SLAPP statute, authorizes the early dismissal of SLAPP actions, and "'SLAPP' is an acronym for 'strategic lawsuit against public

5

participation."'" (*Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1244, fn. 1.) Section 426.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." The statute allows for the summary disposition of meritless lawsuits intended "'to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances.'" (*Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1015.)

"When ruling on an anti-SLAPP motion, the trial court employs a two-step process. It first looks to see whether the moving party has made a prima facie showing that the challenged causes of action arise from protected activity. [Citation.] If the moving party meets this threshold requirement, the burden then shifts to the other party to demonstrate a probability of prevailing on its claims. [Citations.] In making these determinations, the trial court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) Our review is de novo." (*Drell v. Cohen* (2014) 232 Cal.App.4th 24, 29.) If Glendora, as the party moving to strike, does not make "a prima facie showing that one or more causes of action arise from an act in furtherance of the constitutional right of petition or free speech in connection with a public issue," the motion must be denied. (*Ibid*.) "Statements made in litigation, or in connection with litigation, are protected by section 425.16." (*Ibid.*) Nevertheless, "[i]t is not enough to establish that the action was filed in response to or in retaliation for a party's exercise of the right to petition. [Citations.] Rather, the claim must be *based on* the protected petitioning activity. [Citation.] [¶] When a cause of action involves both protected and unprotected activity, the court looks to the gravamen of the claim to determine if the claim is a SLAPP. [Citation.] Protected conduct which is merely incidental to the claim does not fall within the ambit of section 425.16. [Citations.] Where the protected activity will only be used

6

as evidence in the case, and no claim is based on it, the protected activity is only incidental to the claims." (*Ibid*.)

### Route 66's second amended complaint is not based on protected activity.

The parties dispute whether the recording of the liens was protected petitioning activity under the anti-SLAPP statute. Glendora argues that a notice of foreclosure that alerts the plaintiff to an impending foreclosure sale is not a protected petitioning activity for purposes of the SLAPP statute, as it is a purely private transaction initiating nonjudicial foreclosure. (*Garretson v. Post* (2007) 156 Cal.App.4th 1508, 1522–1523, 1524.) The CC&Rs provide that a creditor owner is entitled to record a lien against the parcel of a defaulting owner, which "may be foreclosed judicially or non-judicially." But Glendora did not initiate a foreclosure, judicial or nonjudicial, and recordation of a lis pendens in connection with issues under consideration in a judicial proceeding is protected activity for the purpose of the anti-SLAPP statute. (*La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 471.) Glendora recorded its first lien after Route 66 filed this lawsuit in December 2013 seeking in part to enjoin Glendora from recording the notice of default. Two days later, the court issued a preliminary injunction restraining Glendora from filing a lien in that amount. Glendora then issued a second notice of default for a lesser amount stating that the previous lien was superseded, and even after Route 66 paid the lesser amount under protest, Glendora recorded another lien for that amount. Glendora eventually released the lien under court order. We conclude that Glendora's recordation of the liens were in the course of this lawsuit and in connection with the issues in the SAC, and therefore were protected conduct.

Although Glendora's assertion of a lien in connection with litigation is protected conduct, "a complaint is not a SLAPP suit unless the gravamen of the complaint is that defendants acted wrongly by engaging in the protected activity." (*Drell v. Cohen*, *supra*, 232 Cal.App.4th at p. 30.) Route 66's SAC set out eight pages describing Glendora Courtyard, the parties' respective interests, the CC&Rs, the provisions regarding the parties' responsibilities for the common area expenses, the role of the maintenance director, Route 66's right to audit the books of the maintenance director (Glendora),

7

Route 66's discovery of Glendora's purported overcharging, breaches by Glendora in calculating and allocating the monthly charges and in failing to provide a timely estimated budget, Route 66's payment of the actual monthly maintenance charges, the dispute in the prior lawsuit over the monthly charges, Glendora's mailing of the notice of default for $171,330.27, and its threat to file a lien (as allowed under the CC&Rs). The SAC is grounded on the underlying controversy between Route 66 and Glendora regarding Glendora's purported breach of the CC&Rs and its overcharging of the monthly maintenance fees. The first two causes of action request a declaration regarding Route 66's rights under the CC&Rs and an injunction preventing Glendora from recording another notice of default.

Route 66 also requests that the court remove Glendora as maintenance director in the third cause of action. Of 20 subparagraphs listing grounds for removal, subparagraphs (*l*) and (q) mention Glendora's serving the initial notice of default for $171,330.27 and its filing of the lien for $57,360.67 after Route 66 had paid that amount under protest. Subparagraph (s) alleges that Glendora fraudulently notified Route 66 that the city had directed Glendora's attorney to replace some of the landscaping and replace a sprinkler system with drip irrigation, when the city had not done so. These three subparagraphs do not describe elements of the claims in issue. As we explained above, "that a cause of action arguably may have been 'triggered' by protected activity does not entail it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) The fourth cause of action requests restitution of the sum Route 66 paid Glendora, and an accounting.

Route 66's SAC is not based on protected conduct. The liens and the single communication between the city and Glendora's attorney are incidental to Route 66's underlying claims, which concern the CC&Rs and the actions of Glendora as maintenance director. "None of the purposes of the anti-SLAPP statute would be served

8

by elevating a [monthly charges] dispute to the constitutional arena." (*Drell v. Cohen*, *supra*, 232 Cal.App.4th at p. 30.)

Glendora argues that all Route 66's claims other than those related to the liens were decided on the merits in the prior lawsuit when the trial court granted Glendora's motion for judgment pursuant to section 631.8, which provides in subdivision (c) that a judgment after the grant of the motion operates as an adjudication on the merits, unless otherwise specified in the order for judgment. Glendora argues that as a result, only its protected activity remains as a basis for the lawsuit. The record in this appeal contains the trial court's statement of decision in the prior lawsuit, which states only that the court granted Glendora's motion for judgment on Route 66's claims for breach of contract, the covenant of good faith and fair dealing, and fiduciary duty. Nothing in the record indicates what contractual issues were raised and adjudicated in the prior lawsuit. We note again that in denying summary judgment in the current lawsuit, the trial court rejected Glendora's contention that Route 66's claims had already been adjudicated.

Because the SAC did not arise from protected activity, we do not need to consider whether Route 66 has demonstrated a probability that it will prevail. (*Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722, 735.)

**DISPOSITION**

The order is affirmed. Route 66 CPAs, LLC is to recover costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.

We concur:


CHANEY, Acting P. J.


LUI, J.

9